**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:06cv226**

| | |
|---|---|
| **WILLIAM E. FERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF DECISION** |
| **vs.** ) | **AND ORDER** |
| ) | |
| ) | |
| **BJ'S WHOLESALE CLUB,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for

Summary Judgment [Doc. 21].

**I.      Procedural History**

The Plaintiff William E. Ferry filed this action in the Superior Court of

Mecklenburg County, North Carolina, on August 31, 2005 against the

Defendant BJ's Wholesale Club, asserting claims of wrongful discharge in

violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et

seq. ("ADEA") and the North Carolina Equal Employment Practices Act,

N.C. Gen. Stat. § 143-422.1, et seq.  The Defendant was served with

process on April 24, 2006.  The Defendant filed a timely Notice of Removal to this Court pursuant to 28 U.S.C. § 1441 on May 19, 2006.  The subject matter jurisdiction of the Court pursuant to 28 U.S.C. § 1331 is not in dispute.

After carefully considering the Defendant's Motion for Summary Judgment and Memorandum filed in support thereof [Docs. 21, 22], the Plaintiff's Response [Doc. 28], the Defendant's Reply [Doc. 29], as well as the entire record in this case, the Court concludes that summary judgment in favor of the Defendant is not appropriate as to the Plaintiff's claims. Accordingly, for the reasons set forth herein, the Defendant's Motion for Summary Judgment [Doc. 21] is denied.

## II.    Plaintiff's Rule 56(f) Motion

The Defendant filed its motion for summary judgment on February 9, 2007.  Thereafter, the Plaintiff moved for an additional fourteen (14) days after receipt of the Defendant's outstanding discovery responses to respond to the Defendant's summary judgment motion.  [Doc. 25].  The Defendant did not oppose the Plaintiff's request [Doc. 26], and the Plaintiff filed his response on March 30, 2007. [Doc. 28].

As the Plaintiff has now filed his response to the Defendant's Motion for Summary Judgment, the Plaintiff's Motion Pursuant to Rule 56(f) [Doc. 25] is now moot and is therefore **DENIED AS MOOT**.

## III. Defendant's Motion for Summary Judgment

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact rests with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could

find in its favor.  Id. at 248.  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

**B.    Facts**

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite and consider the relevant facts in the light most favorable to the Plaintiff.

4

## 1. Plaintiff's Hiring and Training

On June 25, 2004, the Plaintiff was hired as a Front Door Loss Prevention Team Member at the BJ's Wholesale Club ("Club") in Charlotte, North Carolina. [Deposition of William Ferry ("Ferry Dep.") at 16].[1] Prior to working for the Defendant, the Plaintiff was employed by the United States Equal Employment Opportunity Commission in Charlotte, North Carolina, from 1972 to 1994. [Id. at 7]. From 1995 to 2004, the Plaintiff worked as an EEO investigator for federal sector employees. [Id. at 17, 20].

At the time of his employment with the Defendant, the Plaintiff was 75 years old. [Id. at 6]. He was employed in a part-time capacity and worked thirty hours per week. [Affidavit of William Ferry ("Ferry Aff.") at ¶ 2].[2] The Plaintiff was interviewed and hired by Personnel Manager Jamie Brown Guilmette ("Guilmette") [Ferry Dep. at 16, 52-53]. The Club's

---

[1] In his opposition brief, the Plaintiff asserts, without any citation to the record, that although he submitted "at least three applications over the course of two years, he was never considered for employment." [Doc. 28 at 3]. The Plaintiff has not alleged a claim for failure to hire, nor does it appear that he could sustain such a claim, as it is undisputed that he was hired by the Defendant in June, 2004.

[2] The Plaintiff was paid $7.50 per hour. [Ferry Aff. at ¶ 14]. In the "Facts" section of his opposition brief, the Plaintiff asserts that his discriminatory treatment included his pay, which he alleges was below the standard rate of pay established by the Defendant for the position of Loss Prevention Team Member. [Doc. 28 at 10]. The Plaintiff has not, however, pled such allegation in his Complaint, and further makes no legal argument in his brief to support this assertion. Accordingly, the Court will not consider the Plaintiff's allegation regarding his pay.

General Manager, Rick Sarsfield ("Sarsfield") did not interview or meet the Plaintiff, but did approve his hiring. [Deposition of Rick Sarsfield ("Sarsfield Dep.") at 45]. The Plaintiff initially reported to Loss Prevention Manager Beth Anne Brooke. When Brooke was terminated for theft, Nicole Bryant became the Plaintiff's supervisor. [Ferry Dep. at 55, 62-63].

When he began his employment, the Plaintiff was paired with two other Front Door Loss Prevention Team Members – William Abel (age 60) and Steve Heh (age 32) – in order to learn the position. [Ferry Dep. at 57-60; Defendant's Responses to Plaintiff's First Set of Interrogatories, No. 2]. Guilmette also covered his basic job responsibilities during orientation. [Ferry Dep. at 56-57]. As a Front Door Loss Prevention Team Member, the Plaintiff's primary duties included making a positive impression on the Club's customers while monitoring entrance and exit activity, reviewing register receipts, recording register transaction discrepancies, responding to alarms, and handling customer inquiries and/or concerns. [Sarsfield Dep., Ex. 3]. The Plaintiff admits that he understood he was required to stay at the front door as part of his duties. [Ferry Dep. at 63].

The first 90 days of the Plaintiff's employment was a probationary or "introductory" period, which, according to the Defendant's Employee Handbook, provides "an opportunity for both [the employee] and the company to determine whether the employment relationship is meeting expectations." [Ferry Aff., Ex. G at 11].

### 2. Plaintiff's Job Performance

The Plaintiff performed most of his duties satisfactorily, and customers liked him. [Sarsfield Dep. at 105]. The Plaintiff received a commendation for good work from a store manager, John McKenzie, in July, 2004. [Ferry Aff. at ¶ 16]. Nicole Bryant testified that the Plaintiff was good at interacting with customers and that he was cheerful. [Bryant Dep. at 22].

Jamie Brown Guilmette testified that the Plaintiff "was always very friendly and pleasant, and he was wonderful to have working for us. I just believe that the issue was he couldn't stay at the front door." [Guilmette Dep. at 35]. Guilmette recalled that she told the Plaintiff once that he needed to remain at the front door. Guilmette could not recall whether she did so because she observed him away from the front door or whether Sarsfield had instructed her to talk to the Plaintiff about it. [Id. at 36].

Guilmette further testified that, on two occasions, she observed Sarsfield walk the Plaintiff from the food court area back to the front door and tell him that he needed to stay there. [Id. at 42-43].

The Defendant offers testimony showing that other Club employees also observed the Plaintiff leaving the front door unattended. Connie Davis, Marilyn Williams, and Kerri Kramer observed the Plaintiff leave the front door unattended on multiple occasions to visit the food court, electronics, and other areas. Davis and Williams both told the Plaintiff on different occasions to return the front door. [Declaration of Connie Davis ("Davis Decl.") at ¶¶ 5-7; Declaration of Marilyn Williams ("Williams Decl.") at ¶¶ 5-7; Declaration of Jessica Kerri Kramer ("Kramer Decl.") at ¶¶ 5-6]. However, the Plaintiff disputes that these employees were able to see where he stood at the front entrance from their work stations. [Ferry Aff. at ¶ 21].

Sarsfield testified that he noticed on several occasions that the Plaintiff would not remain at the front door as he was required to do, and he verbally counseled the Plaintiff about this problem four or five times. [Sarsfield Dep. at 105, 121]. Sarsfield explained in his deposition that the Plaintiff's position was "vital to the store for theft issues" and that he

"needed somebody who would stay in that position and not wander and not go talk to somebody." [Id. at 103].

The Plaintiff admits that Sarsfield spoke to him on one occasion in early July about leaving the front door unattended. [Ferry Dep. at 114]. The Plaintiff testified that on that occasion, a customer at the food court yelled to him, and that he went over to the food court to respond to him. Sarsfield came by and told the Plaintiff to get back to the front door. The Plaintiff testified that "[t]hat's the first time he told me, and that was the last time I left the front door." [Id. at 111].

The Plaintiff testified that the only other time he was accused of leaving the front door unattended was when he stepped outside to instruct a customer on where to park his car while loading. A non-management employee, Marilyn Williams, came by and told the Plaintiff not to leave the front door. [Id.]. The Plaintiff, however, testified that he had not left the front door unattended, but had only stepped out a few steps to instruct the customer where to park. [Id.]. After this incident was reported to the Plaintiff's supervisor, Nicole Bryant, she spoke to the Plaintiff about it. Bryant testified that after she spoke to the Plaintiff, she did not witness him leaving the front door unattended again. [Bryant Dep. at 25-26]. Other

9

than these two incidents, the Plaintiff denies that he ever left the front door unattended. He further denies that he was counseled by any other employees or managers regarding this issue. [Ferry Dep. at 114].

It is undisputed that the Plaintiff was never given a formal reprimand or any written warning about his job performance. The Defendant has a progressive discipline policy, as set forth in the Employee Handbook. [Ferry Aff., Ex. G at 35-39]. The policy sets forth a series of disciplinary steps that may be followed, depending on the level, seriousness, and timing of the violation. These steps include a verbal corrective, written corrective, final written corrective, and termination of employment. It is undisputed that the progressive disciplinary procedures outlined in the Employee Handbook were not followed in this case.

### 3.    Plaintiff's Resignation

Sarsfield testified that after he had observed the Plaintiff leaving the front door unattended for a fourth or fifth time, he decided to offer the Plaintiff a different position. Sarsfield testified that it was his decision to remove Plaintiff from the loss prevention position, and that he did not consult with anyone prior to making this decision. [Sarsfield Dep. at 92]. On September 22, 2004, near the end of the Plaintiff's 90-day introductory

period, Sarsfield and Guilmette met with the Plaintiff.  During that meeting,
Sarsfield advised the Plaintiff that he could no longer work as a Front Door
Loss Prevention Team Member because he left his position too often.  [Id.
at 91-92, 105].  Sarsfield offered him an alternative position in merchandise
demonstrations. [Ferry Dep. at 119; Sarsfield Dep. at 105, 107]. However,
when the Plaintiff asked how many hours he could work in merchandising,
he was told that the hours of work in merchandise demonstrations varied.
Sarsfield admitted that he never offered the Plaintiff a set number of hours
or a set schedule in demonstrations.  [Sarsfield Dep. at 54].  The Plaintiff
told them he would have to think about it.  [Ferry Dep. at 119].

The next day, the Plaintiff gave Sarsfield a letter asking him to
reconsider his decision to remove the Plaintiff from Loss Prevention. [Ferry
Aff., Ex. H].  Sarsfield refused to reconsider his decision.  [Ferry Dep. at
119-20].   Subsequently, the Plaintiff submitted a letter of resignation to
Sarsfield, stating his intention to resign from the Loss Prevention position
and giving two weeks' notice.  [Ferry Aff., Ex. I].  The Plaintiff explained in
his affidavit that he submitted a resignation letter "because I was not
interested in merchandising because it was a completely different job and
quite demeaning in nature, and there was no guarantee of hours; and

because I didn't want my good employment record blemished by a termination." [Ferry Aff. at ¶ 33].

Although the Plaintiff had offered to work for an additional two weeks, the Plaintiff was advised simply to "work out his schedule" for the remainder of the week.  The Plaintiff's last day of employment was on September 25, 2004. [Id. at ¶ 35].

### 4.  Plaintiff's Replacement

In September, 2004, the Defendant hired 29-year-old Mike Campellone.  Sarsfield testified in his deposition that, to his knowledge, Campellone did not work in Loss Prevention. [Sarsfield Dep. at 76].  During his last week of employment, however, the Plaintiff saw a work schedule for the following week which had Campellone assigned to the shifts that Plaintiff previously had worked.  Further, Willie Abel told the Plaintiff that he had trained Campellone for the Loss Prevention position. [Ferry Aff. at ¶ 34].  For the purposes of this motion, the Defendant concedes that Campellone performed some loss prevention work after the Plaintiff left the Defendant's employ.

## C.    Analysis

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on an ADEA claim, the plaintiff must show, by a preponderance of the evidence, that "the plaintiff's age . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (internal quotation marks and alteration omitted).

The Plaintiff does not offer any direct evidence of age discrimination. The parties agree that the Plaintiff's claim, therefore, must be analyzed under the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas framework, a plaintiff must show: (1) he is a member of the protected class; (2) he was qualified for the position and met the employer's legitimate expectations; (3) he suffered an adverse employment action, despite his qualifications and performance; and (4) he was replaced by a substantially younger individual with comparable qualifications.

Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir.), cert. denied, 127 S. Ct. 53 (2006).

Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "produce a legitimate, non-discriminatory reason for the termination." Id. at 513-14. "The employer's burden at this stage 'is one of production, not persuasion; it can involve no credibility assessment.'" Id. at 514 (quoting Reeves, 530 U.S. at 142). If the Defendant meets its burden of production, then the presumption created by the prima facie case is rebutted and "drops from the case." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981). Once the employer satisfies its burden, the burden then shifts to the plaintiff to show that the defendant's proffered reason is pretextual. Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). The plaintiff may prove pretext "either by showing that [the employer's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Id. at 336. At this stage, the plaintiff's burden "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." Burdine, 450 U.S. at 256.

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves, 530 U.S. at 147. "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148.

Although the burden of production shifts between the parties, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

### 1. Plaintiff's Prima Facie Case

In the present case, there is no dispute that the Plaintiff is a member of the protected class, and therefore, he has satisfied the first element of the prima facie case.

With respect to the second element of the prima facie case, the Defendant contends that the Plaintiff voluntarily resigned and was not terminated. It is undisputed that when the Plaintiff was removed from the loss prevention position, he was offered another position in merchandise demonstrations. The Plaintiff chose not to accept this transfer because he

felt that the position was "demeaning" and further because Sarsfield could not guarantee how many hours per week that the Plaintiff could work in that position. In the loss prevention position, the Plaintiff worked a schedule of 30 hours per week at $7.50 per hour. The Plaintiff was not offered any set schedule or minimum guarantee of hours with the merchandise demonstration position. There further is no evidence in the record whether the pay for these positions was comparable. Given this evidence, the Court concludes that the Plaintiff has presented sufficient evidence that he suffered an adverse employment decision. Accordingly, the second element of the prima facie case is deemed satisfied.

Additionally, the Plaintiff must show that he was replaced by a substantially younger person. The Defendant admits that a substantially younger worker, Mike Campellone, performed some loss prevention duties after the Plaintiff's employment ended and thus concedes, for the purposes of this motion, that the fourth element of the prima facie case may be satisfied by this evidence.

Accordingly, it appears that, for the purposes of this motion, the parties dispute only whether the Plaintiff has satisfied the third element of the prima facie case, that is, whether the Plaintiff was qualified and

meeting the legitimate expectations of his employer at the time of his termination.

The Defendant argues that it had a legitimate expectation that the Plaintiff would remain at the front door of the Club so that he could perform his duties as a Loss Prevention Team Member, and that the evidence shows that the Plaintiff failed to meet this expectation by repeatedly failing to remain at the front door. While not disputing the legitimacy of this expectation, the Plaintiff disputes that he repeatedly left the front door unattended, as claimed by the Defendant.

Having carefully reviewed the evidence in this case, and viewing such evidence in the light most favorable to the Plaintiff, the Court concludes that the Plaintiff has presented evidence from which a reasonable jury could conclude that he was meeting the legitimate expectations of his employer at the time of his removal from the Loss Prevention position. The Plaintiff's primary duties included making a positive impression on the Club's customers while monitoring entrance and exit activity, reviewing register receipts, recording register transaction discrepancies, responding to alarms, and handling customer inquiries and/or concerns. The testimony of the Plaintiff's managers indicates that

the Plaintiff interacted well with customers and that he was cheerful and pleasant.[3] He received a commendation for good work in July, 2004. The only job duty that the Defendant claims that the Plaintiff performed deficiently was monitoring the entrance and exit activity at the front door of the store. Viewing the evidence in the light most favorable to the Plaintiff and drawing all reasonable inferences in his favor, the Plaintiff has produced evidence that he only left the front door unattended on one occasion in July, 2004, when he walked over to the food court to talk to a customer. After being verbally counseled about that incident, the Plaintiff never left the front door unattended again. The Plaintiff admits to being cited one other time by Marilyn Williams, a non-managerial employee, about leaving the front door unattended. However, the Plaintiff disputes that he had left the front door, and insists that he had just stepped a few steps outside to direct a customer where to park. Bryant talked to the Plaintiff after this incident was reported to her, and she testified that she

_____

[3]In opposition to the defendant's motion, the Plaintiff submits the affidavits of two customers, Jan Rapisardo and Robert Schwartz, who both testified that the Plaintiff checked carts thoroughly and matched the number of items on the receipt with the items in the cart. [Affidavit of Jan Rapisardo ("Rapisardo Aff.") at ¶ 4; Affidavit of Robert Schwartz ("Schwartz Aff.) at ¶ 5]. Opinions of third parties, however, are not probative of whether the Plaintiff was meeting his *employer's* legitimate expectations. See Warch, 435 F.3d at 518. Accordingly, the testimony of these two customers will not be considered in determining whether the Plaintiff met this element of the prima facie case.

never saw him away from the front door again. According to the Plaintiff's proof, other than these two incidents, the Plaintiff was never reprimanded or counseled by management, either verbally or in writing, about leaving the front door unattended. Based upon the evidence presented, a reasonable jury could conclude that the Plaintiff was meeting the legitimate expectations of his employer at the time of the adverse employment decision. Accordingly, the Court concludes that the Plaintiff has established a prima facie case of discrimination.

### 2. Defendant's Reason for Employment Decision

Having determined that the Plaintiff has presented sufficient evidence to make out a prima facie case, the burden shifts to the Defendant to produce a legitimate, non-discriminatory reason for the employment decision. The Defendant's proffered reason – that the Plaintiff repeatedly left the front door unattended – satisfies this requirement, and the legitimacy of this reason is not disputed by the Plaintiff.

### 3. Pretext

Next, the Court must determine whether the Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether

the Defendant's proffered reason for the adverse employment decision was pretextual.

Citing <u>Proud v. Stone</u>, 945 F.2d 796 (4th Cir. 1991), the Defendant argues that it is entitled to a "strong inference" that the Plaintiff was not the victim of intentional discrimination because he was hired and fired in a short period of time by the same person.  The Plaintiff argues, on the other hand, that he was hired and terminated by different people, and further, that he has provided sufficient evidence to demonstrate that his removal from the Loss Prevention position was pretextual.

In <u>Proud</u>, the Fourth Circuit held that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."  <u>Id.</u> at 797.  The evidence in the present case, when viewed in the light most favorable to the Plaintiff, demonstrates that Guilmette was responsible for hiring the Plaintiff, and that her decision was later approved by Sarsfield.  Sarsfield did not meet or interview the Plaintiff prior to his hiring, and thus, Sarsfield's role, if any, in the hiring of the Plaintiff is limited at best.  Further, it is undisputed on this record that

Guilmette did not participate in the decision to remove the Plaintiff from the loss prevention position, and that the decision to remove the Plaintiff was the decision of Sarsfield alone. Under these circumstances, the Court concludes that any inference permitted by Proud v. Stone does not require entry of summary judgment in favor of the Defendant.

The Defendant argues that the Plaintiff cannot refute the Defendant's legitimate reasons with the Plaintiff's own self-serving testimony that he did not leave the front door unattended. In support of this assertion, the Defendant cites Evans v. Technologies Applications & Service Co., 80 F.3d 954 (4th Cir. 1996). In Evans, the plaintiff claimed that she was discriminated against when she was denied a promotion. Citing her own testimony, the plaintiff argued that she was better qualified than the other applicants for the position. The Fourth Circuit held that the plaintiff could not create a genuine issue of material fact by relying on her own "unsubstantiated allegations and bald assertions" regarding her qualifications. Id. at 960. "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. at 960-61 (quoting in part Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Evans, however, is distinguishable from the present case.  In Evans, the plaintiff was disputing whether she was better qualified for a promotion than other employees.  An assessment of an employee's qualifications, however, is a matter of an employer's perception, and thus, the plaintiff's opinions to the contrary are irrelevant.  In the present case, however, whether the Plaintiff was failing to perform the duties of his job by leaving the front door unattended is not a matter of opinion.  It is a question of what *occurred*.  It is an issue of fact, an issue that a jury must decide in this case.

Such, however, is not the end of the analysis.  In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court stated that

> a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. . . .For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, ***or*** *if the plaintiff created only a weak issue of fact as to whether the employer's reasons was untrue **and** there was abundant and uncontroverted independent evidence that no discrimination had occurred*.

Reeves, 530 U.S. at 148 (emphasis added).

The Court must therefore analyze whether the Plaintiff's proof rebutting the Defendant's evidence of a non-discriminatory reason presents a "weak issue of fact" or an issue of fact that is otherwise. Next, the Court must consider whether, in light of this "weak issue of fact," the Defendant has presented a forecast of evidence that meets the second part of the <u>Reeves</u> test, namely a showing of "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." <u>Id.</u> at 148.[4]

On this issue, the Court finds the case of <u>Bennett v. City of Greensboro</u>, No. 1:02CV00366, 2002 WL 32086528 (M.D.N.C. Nov. 7, 2002), instructive. In <u>Bennett</u>, the plaintiff was terminated for numerous acts of misconduct and insubordination. In her deposition, the plaintiff disputed most of the criticized behavior and opined that her supervisor had either misinterpreted her behavior or was lying. The plaintiff's supervisor, however, kept a written log of the plaintiff's work behaviors, documenting

---

[4]Even though the language employed by the Supreme Court in <u>Reeves</u> appears at first blush to imply that the Court should "weigh" the evidence presented on summary judgment to determine whether it is weak or strong, this is clearly not what the Court intended. As the Court later states in <u>Reeves</u>, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Id.</u> at 150 (quoting <u>Anderson v. Liberty Lobby</u>, 447 U.S. 242, 255 (1986)).

various acts of misconduct and insubordination. The plaintiff was also presented with a written evaluation which warned that any further inappropriate behavior would lead to her termination.

In granting the defendant's motion for summary judgment, the court held that the defendants had presented evidence showing "persistent and well-documented performance problems" throughout the plaintiff's employment with the defendants. In light of "this solid showing," the court concluded that the plaintiff's "mere denial" of misconduct created only a weak issue of fact and did not, "in and of itself, create a sufficient issue of fact as to the legitimacy of [the] reason for her termination." Id. at *6-*7.

Like the plaintiff in Bennett, the Plaintiff in the present case has sought to rebut the Defendant's evidence that he was terminated from employment because he failed to remain at his appointed post by presenting to the Court his own uncorroborated affidavit and deposition testimony that he remained where he was instructed to be. Such uncorroborated and self-serving testimony is precisely the sort that gives rise to a "weak issue of fact" under Reeves.

However, unlike the employer in Bennett, the Defendant in the present case has not made a solid showing of the Plaintiff's misconduct.

24

The Plaintiff's alleged problems in remaining at his post are not documented in the Plaintiff's personnel file. Indeed, there is no documentary evidence that the Defendant was dissatisfied with the Plaintiff's performance. Rather, there is only the conflicting testimony of the parties. On this point, there is a sharp dispute of facts; the Plaintiff maintains that he did not leave his post but one time and the Defendant maintains that he left the post frequently.

The Defendant's forecast of evidence is focused on the issue of a non-discriminatory reason for the termination of the Plaintiff's employment. The Defendant has presented the Court with essentially no forecast, other than the evidence pertaining to its claimed non-discriminatory reason, from which a potential trier of fact could find that the Plaintiff's age had nothing to do with his firing. Alas, at the end of this long volley of employment discrimination tennis, it is the Defendant who has failed to hit this one back.

The Plaintiff has created a genuine, albeit weak, issue of fact as to the legitimate reason for his removal. The Defendant meanwhile has failed to set forth "abundant and uncontroverted independent evidence that no discrimination occurred." See Reeves, 450 U.S. at 148. To grant

summary judgment under these circumstances "would be to intrude on the jury function by substituting [the Court's] own judgment for that of the finder of fact." Dennis v. Columbia Colleton Med. Center, 290 F.3d 639, 649-50 (4th Cir. 2002).

For the reasons set forth above, the Court concludes that the Plaintiff has demonstrated that a genuine factual dispute exists as to whether the proffered reason for the Plaintiff's removal was false. See McClamb v. Rubin, 932 F. Supp. 706, 715 (M.D.N.C. 1996) ("At the summary judgment stage . . .the plaintiff can avoid summary judgment by showing merely that the employer's explanations are pretextual or that a genuine factual dispute exists concerning the defendant's proffered reasons."). Because the court concludes that there is a genuine issue of material fact which precludes a grant of summary judgment on the Plaintiff's ADEA claim, the Court must also deny the Defendant's Motion with respect to the Plaintiff's state law claim under N.C. Gen. Stat. § 143-422.2. See Alderman v. Inman Enterprises, Inc., 201 F. Supp. 2d 532, 546 (M.D.N.C. 2002) ("In determining the parameters of an age discrimination claim under N.C. Gen. Stat. § 143-422.2, the Court should apply the same standards that apply under the ADEA."), aff'd, 58 Fed. Appx. 47 (4th Cir. Feb. 27, 2003).

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion Pursuant to Rule 56(f) [Doc. 25] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 21] is **DENIED**.

Signed: December 10, 2007

Martin Reidinger